RONALD LEE DOWIS, INDIVIDUALLY AND AS FATHER AND NEXT
FRIEND OF JUSTIN DOWIS, A MINOR, APPELLANT, V. CONTINENTAL
ELEVATOR COMPANY, INC., A NEBRASKA CORPORATION, ET AL.,
APPELLEES.

486 N.W.2d 916

Filed August 7, 1992.   No. S-89-1271.

Joseph B. Muller, of The Law Offices of Ronald J. Palagi, P.C., for appellant.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellee Continental Elevator Co.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

This is a negligence action in which Ronald Lee Dowis, individually and as next friend of his minor son, Justin Dowis, appeals from the summary judgment granted to Continental Elevator Company, Inc., in the district court for Douglas County. Justin Dowis is a 2-year-old child who was injured in a fall down a freight elevator shaft. Continental Elevator maintained the elevator equipment involved in the accident. We

reverse, and remand for further proceedings.

## STANDARD OF REVIEW

In his appellate brief, Dowis refers to *Bank of Valley v. Shunk*, 208 Neb. 200, 205-06, 302 N.W.2d 711, 715 (1981), for the proposition that "[s]ummary judgment . . . should be awarded only when the issue is clear beyond all doubt." However, in *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 878-79, 485 N.W.2d 170, 174-75 (1992), we recently and expressly disapproved of the "clear beyond all doubt" standard for a summary judgment and stated:

" 'A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. [Citation omitted.]' " *Murphy v. Spelts-Schultz Lumber Co., ante* p. 275, 277, 481 N.W.2d 422, 425 (1992) (quoting from *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988)). Accord, *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989); *Wilson v. F & H Constr. Co.*, 229 Neb. 815, 428 N.W.2d 914 (1988); *Wibbels v. Unick*, 229 Neb. 184, 426 N.W.2d 244 (1988).

" 'On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists.' " *Murphy v. Spelts-Schultz Lumber Co., ante* at 277-78, 481 N.W.2d at 426 (quoting from *Newman v. Hinky Dinky*, 229 Neb. 382, 427 N.W.2d 50 (1988)).

" 'The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment

as a matter of law if the evidence presented for summary judgment remains uncontroverted. [Citations omitted.] After the movant for a summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party.' " *Murphy v. Spelts-Schultz Lumber Co., ante* at 278, 481 N.W.2d at 426 (quoting from *Wilson v. F & H Constr. Co., supra*). Accord *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991).

## ACTIONABLE NEGLIGENCE

"For actionable negligence, there must be a defendant's legal duty to protect or not injure the plaintiff, a failure to discharge that duty, and plaintiff's damage proximately caused by such undischarged duty." *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 851, 438 N.W.2d 485, 490 (1989).

" ' "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. . . .

" 'A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' Prosser and Keeton on the Law of Torts, *Limited Duty* § 53 at 356 (5th ed. 1984).

"Foreseeability is a factor in establishing a defendant's duty, or, as expressed by Justice Cardozo in *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 394, 111 N.E. 1050, 1054 (1916): ' "[F]oresight of the consequences involves the creation of a duty . . . .' " See, also, *Lock v. Packard Flying Service, Inc.*, 185 Neb. 71, 73, 173 N.W.2d 516, 518 (1970): ' " 'Foresight, not retrospect, is the standard of diligence. . . .' " ' . . ."

. . . "The view currently prevailing in this country [limits] the scope of the duty to do or refrain from doing a given act to (1) those persons that are likely to be

endangered by the act or omission, and (2) harm (to such person or interest) from a risk the likelihood of which made the act or omission negligent."

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 172-73, 425 N.W.2d 872, 881 (1988). Accord, *Ditloff v. Otto*, 239 Neb. 377, 476 N.W.2d 675 (1991); *Holden v. Urban*, 224 Neb. 472, 398 N.W.2d 699 (1987).

## BACKGROUND

*The Accident.*

On September 28, 1981, the Dowis family was using a freight elevator to move some personal belongings into a part of an industrial building leased by Ronald Dowis' employer. At a rear corner of the elevator was a 10- to 14-inch opening between the elevator's unused rear door and a side wall of the elevator car. The opening, with its height sufficient to accommodate an average-sized standing adult, exposed the car's interior directly to the elevator shaft. At some point, while the Dowis family was returning to the stationary elevator car that had transported the Dowises, 2-year-old Justin ran ahead of everyone, entered the opening at the rear of the elevator, and fell 16 feet to the bottom of the shaft, sustaining severe injuries.

*Pleadings and Motion for Summary Judgment.*

Ronald Dowis brought suit on behalf of himself and his son against various defendants, including Continental Elevator; Guardsmark, Inc., a Tennessee corporation; and City of Omaha, a municipal corporation. In Dowis' amended petition, he alleged that Continental was under "an oral contract to do maintenance and repair work on the elevator," had negligently maintained an unsafe elevator which Continental knew or should have known that children were likely to enter and be injured, and had failed to warn elevator users concerning the elevator's unsafe condition.

The Dowis petition further alleged that Continental was also negligent:

a. In maintaining an elevator which had a recess located at a position which was not necessary for loading, unloading, or for the installation of elevator equipment;

b. In maintaining an elevator which had a clearance

between the side wall of the car platform and the enclosure in excess of five inches;

    c. In maintaining an elevator which was not enclosed on all sides;

    d. In failing to provide car doors or gates;

    e. In failing to warn individuals entering onto the elevator, and specifically Justin Dowis, of the unsafe condition of the elevator and the danger in utilizing the same.

Continental generally denied Dowis' allegations concerning the alleged negligence and later filed its motion for summary judgment.

*Summary Judgment Hearing.*

Testimony for the summary judgment hearing was supplied through depositions with corresponding exhibits.

Under a March 3, 1980, "Oil & Grease" contract with Midwest Animal Products, Inc. (Midwest), owner of the building in which the subject elevator is located, Continental was required to clean, lubricate, and make minor adjustments to the elevator mechanism for a flat fee of $150 per month under the contract, which also provided in pertinent part:

EXTENT OF COVERAGE

The Continental Elevator Company, Inc. will service the elevator equipment as hereinafter described on terms and conditions subsequently set forth. We will use trained, qualified men directly employed and supervised by us. This service shall consist of all labor required to make   1   examinations per month, and only such labor and materials as specified herein will be furnished under this agreement including:

| | |
|---|---|
| Cleaning and Oiling Machine, Motor and Controller | Necessary Minor Adjustments at the Time of Regular Examinations |
| Lubricating Bearings and Guides | Furnishing the Necessary Rope Preservatives and Cotton Waste |

We also propose to furnish without charge all necessary lubricants and cleaning materials except reservoir oil for

lifting medium on hydraulic elevators unless specified.

We also will examine, lubricate and adjust the following accessory equipment:

NONE

The Purchaser agrees to report immediately any condition which may indicate the need for correction before the next regular examination. You agree to accept our judgment as to the means and methods to be employed for any corrective work under consideration.

The oil and grease contract contained no provision requiring Continental to make safety inspections of elevators or elevator equipment involved in the contract.

Continental's records of service for the elevators reflect that Continental's work was not restricted to cleaning and lubricating elevator equipment, and included safety tests on the elevator in question, before and after the Dowis accident. For instance, the service records disclose that Continental had on occasion provided extensive repairs on the elevators in Midwest's building. One invoice shows 28 man-hours of labor for the installation of a "new Hollister Whitney safety plank, assembly, new bottom guide shoes & new lift rod & bracket assembly, shortened governor rope, repaired governor tension sheave" at a cost of $4,138. Another invoice, reflecting Continental's charges for $7,449, shows installation of "new safety's [sic] for car B and C elevators. Installed new governor, and governor tail sheave. Added two new springs for 'B' elev. (buffer) Did two Syro. safety test 'B' and 'C.' elev." Thus, although descriptions of these repairs are somewhat sketchy, nonetheless the service records show that Continental had undertaken activities much more extensive than cleaning and lubricating elevator machinery and equipment. Additionally, at some point before the accident, Continental signed a Nebraska "Safety Test Report" for the elevator in question and, regarding a safety test, marked a safety test tag "fair," and attached that tag to the elevator used by the Dowises.

According to Richard and David Neubauer, officers of Midwest, Continental was under contract to inspect the elevator before the accident, and it rendered services whenever the elevator required any technical work. Neubauers always

employed Continental for any work on the elevators.

In the view of Russell Kramer, an elevator expert for Dowis, Continental's activity regarding the elevator violated the standard of care prescribed by national elevator standards. As Kramer expressed, Continental "should have notified the building owner about this hole [at the rear of the elevator car]," and the elevator should have been taken out of service until the hazardous situation was rectified. Kramer further indicated that in the elevator maintenance industry, oil and grease contracts, such as Continental's agreement with Midwest, impose on the service provider the duty to issue a warning concerning unsafe elevator conditions.

A professional engineer, testifying for Dowis, stated that the elevator's condition presented a hazard which should have been removed or indicated by appropriate warnings.

The district court, determining "from the evidence introduced on behalf of the parties" that there was no genuine issue of material fact, concluded that Continental was entitled to judgment as a matter of law and, therefore, granted Continental summary judgment, dismissing the Dowis action.

## ASSIGNMENTS OF ERROR

Dowis asserts that summary judgment was improper because genuine material fact questions existed regarding (1) the scope of Continental's duties under its elevator maintenance contract with the building's owner, (2) whether Continental had contracted to make safety inspections of the elevator, and (3) whether Continental, by signing a Nebraska "Safety Test Report" and attaching a safety test tag to the elevator, had represented that the elevator was in a safe condition for use.

Responding to Dowis, Continental contends, in substance, that the express terms of its oil and grease contract determine Continental's entire responsibility regarding the elevator.

## GENUINE ISSUES OF MATERIAL FACT

Despite Continental's position that its duties regarding the elevator were limited to the maintenance tasks described in the oil and grease contract, the record shows that, before and after the accident, Continental was actually engaged in much more extensive work regarding the elevator, work that may have been

performed pursuant to the oil and grease contract, or perhaps performed pursuant to an oral contract, as alleged in Dowis' petition. Substantial charges paid by Midwest in addition to, or in lieu of, the monthly flat fee prescribed in the oil and grease contract support an inference that Continental and Midwest had an agreement or agreements other than the oil and grease contract regarding Continental's work on Midwest's elevators. Testimony from experts, if believed, indicates that the oil and grease contract implicitly imposed additional duties regarding safety measures and warnings based on custom prevailing throughout the elevator industry.

Finally, even if Continental had no express contractual duty to perform the safety inspections which they apparently undertook, the failure to exercise reasonable care in performing those inspections may, nonetheless, be a basis for imposition of tort liability on Continental.

> " 'If a party undertake[s] to perform work, and proceed[s] on the employment, he makes himself liable for any misfeasance in the course of that work . . . .' " See *Hart v. Ludwig*, 347 Mich. 559, 562, 79 N.W.2d 895, 896-97 (1956), citing and quoting from *Elsee v. Gatward*, 5 Durnform & East's 143, 101 Eng. Rep. 82 (1793).
>
> The oft-quoted rule was aptly and simply expressed by Judge Benjamin Cardozo in *Glanzer v. Shepard*, 233 N.Y. 236, 239-40, 135 N.E. 275, 276 (1922): "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all (*Coggs v. Bernard*, 2 Ld. Raymond, 909; *Shiells v. Blackburne*, 1 H. Bl. 158; Willes, J., in *Skelton v. L. & N. W. Ry. Co.*, L. R. 2 C. P. 631, 636; Kent, Ch. J., in *Thorne v. Deas*, 4 Johns. 84, 96)."
>
> Judge Cardozo later paraphrased the rule in *Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167, 159 N.E. 896, 898 (1928): "The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all."

*McGinn v. City of Omaha*, 217 Neb. 579, 597-98, 352 N.W.2d 545, 555 (1984).

As we noted in *Wickersham v. State*, 218 Neb. 175, 181-82, 354 N.W.2d 134, 139 (1984), an action brought under the State Tort Claims Act:

> When one under no obligation to act does undertake action, one must act with reasonable care. See *Indian Towing Co. v. United States*, [350 U.S. 61, 76 S. Ct. 122, 100 L. Ed. 48 (1955)]. . . . [A]n individual, must act with reasonable care in reference to action undertaken without an obligation to act. See *Barnum v. Rural Fire Protection Company*, 24 Ariz. App. 233, 537 P.2d 618 (1975); accord *Wolf v. City of New York*, 39 N.Y.2d 568, 349 N.E.2d 858, 384 N.Y.S.2d 758 (1976). See, also, *Wulf v. Rebbun*, 25 Wis. 2d 499, 131 N.W.2d 303 (1964). Having acted in this case, the State's conduct must be evaluated by the standard of reasonable care.

We conclude that the evidence presented at the hearing on Continental's summary judgment motion, when viewed in the light most favorable to Dowis, who is entitled to the benefit of all reasonable inferences deducible from the evidence, raises genuine issues of material fact, questions that remain to be answered, such as:

(1) Did any contract between Continental and Midwest, or the nature of Continental's services, impose on Continental a duty to conduct safety inspections of the elevator?

(2) Did any contract between Continental and Midwest, or the nature of the work rendered by Continental, require that Continental warn prospective elevator passengers concerning the unsafe condition of the elevator?

(3) Did Continental have a duty to repair the unsafe condition or eliminate the hazard from the elevator?

(4) In the absence of an express contract to conduct safety inspections of the elevator, did Continental undertake to conduct elevator safety inspections, and, if so, did Continental exercise reasonable care in those inspections?

## CONCLUSION

Since there are at least the issues of material fact which we have noted above, we conclude that the district court improperly granted summary judgment to Continental.

Therefore, the summary judgment granted to Continental is reversed, and this cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.