KAREN PARRISH, SPECIAL ADMINISTRATOR OF THE ESTATE OF
ELDON E. PARRISH, DECEASED, APPELLANT, V. OMAHA PUBLIC
POWER DISTRICT ET AL., APPELLEES.

496 N.W.2d 902

Filed March 12, 1993.　No. S-90-665.

The Law Offices of Ronald J. Palagi, P.C., for appellant.

Rex A. Rezac and Lon A. Licata, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee Omaha Public Power District.

Terry J. Grennan and Theodore J. Stouffer, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Hawkins Construction Company.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Karen Parrish, special administrator of the Estate of Eldon Parrish, deceased, brought a wrongful death action against the Omaha Public Power District (OPPD) and Hawkins Construction Co. The district court for Douglas County granted summary judgment for OPPD and Hawkins and dismissed Parrish's action.

## STANDARD OF REVIEW

"On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists." *Newman v. Hinky Dinky*, 229 Neb. 382, 385, 427 N.W.2d 50, 53 (1988). Accord, *Dowis v.*

*Continental Elev. Co.*, 241 Neb. 207, 486 N.W.2d 916 (1992); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992). "[A] summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed." *Wachtel v. Beer*, 229 Neb. 392, 399, 427 N.W.2d 56, 61 (1988). Accord, *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991).

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988). Accord, *Dowis v. Continental Elev. Co., supra*; *Anderson v. Service Merchandise Co., supra*; *Murphy v. Spelts-Schultz Lumber Co., supra*. See Neb. Rev. Stat. § 25-1330 et seq. (Reissue 1989) (summary judgments).

"Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). Accord *Ehlers v. Perry, ante* p. 208, 494 N.W. 2d 325 (1993).

## BACKGROUND

On June 9, 1987, Eldon Parrish was killed when he fell from a portable platform at the construction site of OPPD's Energy Plaza Building. OPPD owned the building, and Hawkins was the general contractor in the construction work. Eldon Parrish was an employee of Northwest Erection Services (Northwest),

Hawkins' subcontractor for installation of structural steel in OPPD's building.

*The Construction Contracts.*

The construction contract between OPPD and Hawkins provided that Hawkins would act as the general contractor for all phases of the construction, would furnish all supervision, labor, and materials, and would have control over the daily operations in the construction project. Specifically, the OPPD-Hawkins contract stated:

3.00 SITE CONDITIONS

3.01 The Contractor shall keep himself fully appraised throughout the performance of the contract of existing conditions at the site, including the status and progress of other work thereat, which may affect the performance of this contract. . . .

. . . .

5.00 SITE SUPERVISION

5.01 The Contractor shall maintain on the site at all times during the progress thereof, a competent resident general superintendent and any necessary assistants, all satisfactory to the District.

. . . .

6.00 SUBCONTRACTORS

. . . .

6.02 If the Contractor shall subcontract any part of this contract, the Contractor shall be as fully responsible to the District for the acts and omissions of his subcontractors and of the persons directly or indirectly employed by his subcontractors as he is for the acts or omissions of persons directly employed by himself.

. . . .

13.00 INSPECTION

13.01 The District reserves the right to conduct inspections and by any such inspectors as it sees fit and hereby requires that such inspectors shall have the right to inspect all Work as it progresses and shall have access to all data relevant to the performance of this contract. . . .

. . . .

## 23.00 OCCUPATIONAL SAFETY AND HEALTH

23.01 At all times during the performance of the Work, the Contractor shall exercise precaution for the protection of persons and property. The safety provisions of applicable laws, building and construction codes shall be observed. . . .

23.02 The Contractor agrees to comply with the provisions of the Occupational Safety and Health Act of 1970 including any and all applicable amendments and the standards and regulations issued thereunder and interpretations thereof. . . .

23.03 The Contractor agrees to take immediate remedial action to correct any unsafe condition and when so ordered, to stop any part of the Work which the District deems unsafe until appropriate corrective measures have been taken, and further agrees to make no claim for additional costs or damages resulting from such stoppages. Should Contractor, after due notice, fail to adopt the corrective measures, the District may have them implemented and deduct the cost from payments otherwise due the Contractor. Failure on the part of the District, or their representatives to notify the Contractor of any unsafe condition or practices shall not relieve the Contractor of his responsibility.

. . . .

## 25.00 PROTECTION OF PROPERTY AND PUBLIC LIABILITY

25.01 The Contractor shall be liable for any damages resulting from his operations. [Hawkins] shall be fully responsible for the protection of all persons including members of the public, employees of the District, other contractors or subcontractors . . . .

. . . .

## 27.00 CONTROL OF WORK DURING CON-STRUCTION

27.01 The Work from commencement of Work to completion shall be under the charge and control of the Contractor . . . .

Under the construction agreement, OPPD retained the right of inspection to determine that all work conformed with OPPD's plans and specifications, the right to monitor overall progress of the work, and the right to take over the construction in the event that Hawkins failed "to perform said Work according to the provisions of the contract documents, or if for any other cause or reason whatsoever the Contractor shall fail to carry on said Work in an acceptable manner."

As expressed in the subcontract between Hawkins and Northwest, "the terms and provisions" of the OPPD-Hawkins contract "are incorporated into this Subcontract by reference thereto and the Subcontractor agrees to be bound to the Contractor and the Owner by the terms and provisions therefor." The subcontract required that Northwest comply with all safety regulations and the "safety measures called for by the Contractor" and that Northwest "search for, discover and correct any and all unsafe conditions." Similar to the OPPD-Hawkins contract, the subcontract contained the provision that, if Northwest failed to comply with any provision of the subcontract, Hawkins had the right to "remedy the situation at the cost of the Subcontractor."

*The Work Site.*

To monitor the construction work, OPPD stationed Steven Bottum, a licensed professional engineer, at the construction site for daily contact with work on the Energy Plaza project. Bottum reported to OPPD concerning the status of construction work in progress and any problems that had arisen in the project. Bottum even exerted some supervisory control over the construction involved in the OPPD project. For instance, Bottum required alternative courses in construction, indicated a procedure for dynamiting in the demolition of part of OPPD's old structure which was replaced by the new construction, resolved "submittal deficiencies, i.e., welding procedures," and directed removal of certain structural supports and additional steps for reinforcement of steel work in OPPD's new building. Marc Nichols, OPPD's project manager, was involved in coordinating and supervising Hawkins' work during all phases of the construction, including safety during

the construction. Nichols' role regarding hazards that might be a violation of safety regulations is illustrated by one of his letters to Hawkins in which he wrote to call "attention to OSHA [Occupational Safety and Health Act] requirements for toe boards and handrail protection. Please investigate and respond."

*The Fatal Accident.*

Eldon Parrish was welding steel cross-members to steel columns as part of the framework inside OPPD's building. The cross-members had previously been installed and temporarily welded to the columns by Northwest's employees. Parrish was positioned in a portable platform, known as an "angel wing," attached to the cross-member on which he was making final welds to permanently hold the cross-member in place. There was no safety net beneath the area where Parrish was working, nor was there a temporary or permanent floor within two levels below Parrish's location in the construction. When the cross-member supporting the angel wing broke free from the temporary welds, Parrish plunged over 50 feet to his death.

*Suit and Summary Judgment.*

Karen Parrish, special administrator of Eldon Parrish's estate, filed suit against OPPD and Hawkins, alleging that they were negligent in failing to exercise reasonable care to assure a safe workplace and that they were liable for Northwest's negligence in the project. OPPD and Hawkins moved for summary judgment. Several depositions, affidavits, photographs, and documents were submitted relative to the requested summary judgment.

Depositions included that of Darryl Charlson, Northwest's supervisor on the project, who testified that there was "no concern at all" that men would be working high above the nearest solid level. Although Charlson said that safety was emphasized, he did not recall giving any instruction to Northwest's employees regarding the proper method of "tying off" safety lines. Charlson did not know whether Eldon Parrish "tied off" his safety line before the fatal fall.

Charles Schultz, a specialist in inspecting construction sites to help contractors provide a safe workplace, testified:

"Hawkins being in complete charge of the construction work should have seen that the subcontractor that they hired provide a safe and proper workplace for their workers." Specifically, Schultz stated that, since Northwest was "under the direct control of Hawkins" in the project, Hawkins had a duty to inspect the work site daily to assure that there was "a safe workplace for the workers that were employed on that job site." Also, Hawkins had the duty to supervise Northwest's work and was negligent in failing to ascertain that steel workers were working without a safety net at a height more than two stories or 30 feet above the last "planking" or floor area beneath Parrish's location. Schultz also testified that, if Hawkins had properly supervised Northwest's work, Hawkins would have learned that, contrary to regulation under the Occupational Safety and Health Act, steel erection was being performed in an unsafe setting without a safety net or proper floor or decking at the site where Parrish was working. According to Schultz, Hawkins failed to supervise or inspect Northwest's work in progress and, consequently, violated the Occupational Safety and Health Act by failing to require proper protection against a steel worker's falling from the framework within OPPD's structure. Finally, Schultz testified that Hawkins was negligent when it failed to warn Eldon Parrish about the "unsafe conditions" at the location of Parrish's work.

Gary Tackett, a construction engineer, testified that

> because of their [OPPD's and Hawkins'] failures, Parrish fell to his death. And by "their failures," I mean their failures to have an ongoing safety program and a written hazard analysis, or as Hawkins calls it, a safety phase plan, made on how the work is to be performed. Had that been done, I don't believe the accident would have ever happened.

Tackett also testified that Hawkins, as the general contractor, had the primary duty to see that Northwest's work on the project was being "done in a safe manner" and that Northwest had the responsibility to comply with Hawkins' safety program, although it appeared that Hawkins had no safety program for the OPPD project. Tackett, referring to the presence of OPPD's on-site representatives, concluded that

OPPD had the "obligation anytime [it] sees an unsafe condition to correct it, no matter what the chain of command is." Moreover, OPPD "failed to correct a dangerous situation or bring it to Hawkins' attention," notwithstanding that OPPD had the "responsibility to have Hawkins correct those [safety] deficiencies, and they didn't."

Both Schultz and Tackett testified that Eldon Parrish probably would not have been killed if safety netting or a temporary floor were used in conjunction with the steel framework inside OPPD's building. Also, Schultz and Tackett testified that, under the circumstances existing at the time of Eldon Parrish's fall from the angel wing, a safety line was inadequate protection because there was no suitable place where the safety line might be "tied off."

After receiving all the foregoing evidence, the court granted summary judgment to OPPD and Hawkins.

## ASSIGNMENTS OF ERROR

Karen Parrish assigns two errors: (1) The trial erred by granting OPPD and Hawkins a summary judgment based on the conclusion that neither OPPD nor Hawkins had any duty to protect Eldon Parrish and, consequently, erred by dismissing the Parrish action; and (2) the trial court erred by considering certain affidavits offered by OPPD and Hawkins.

## NEGLIGENCE

"For actionable negligence there must be a defendant's legal duty to protect the plaintiff from injury, a failure to discharge that duty, and damage resulting from such undischarged duty. [Citations omitted.]

" ' "Duty" ' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in light of the apparent risk. . . .

" 'A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' Prosser and Keeton on the Law of Torts, *Limited Duty* § 53 at 356 (5th ed. 1984)."

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 172-73, 425 N.W.2d 872, 881 (1988) (quoting *Holden v. Urban*, 224 Neb. 472, 398 N.W.2d 699 (1987)). The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. See *Dieter v. Hand*, 214 Neb. 257, 333 N.W.2d 772 (1983).

Thus, the fundamental question is whether OPPD or Hawkins had the duty to protect Eldon Parrish from the hazard of falling from the steel framework in OPPD's building. Karen Parrish contends that OPPD had the duty to protect as a result of OPPD's retained control over the construction site and work, and that, as owner of the premises, OPPD had a nondelegable duty to protect Eldon Parrish from the hazard that caused his death. Parrish also contends that Hawkins, as the general contractor in control of the project, had a duty to provide Eldon Parrish with a safe place to work and that due to the danger inherent in the work performed by Eldon Parrish, Hawkins is liable for Northwest's negligence.

## OPPD'S DUTY

*Direct Liability.*

Generally, one who employs an independent contractor is not liable for the contractor's negligence. See *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981). However, the employer of an independent contractor may be liable if the employer retains control over the contractor's work, or if, by rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor. See *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984).

In *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972), we held that OPPD and its general contractor were liable for injuries to a subcontractor's employee who fell through an opening in the floor at a construction site supervised by the general contractor. In its contract with the general contractor, OPPD had reserved the right to control all phases of the work. OPPD also had a supervisor on site who was the acknowledged " 'over-all head of everything there.' " 189 Neb. at 187, 202 N.W.2d at 161. In *Simon*, after noting that the "safe

place to work" doctrine was an accepted component of Nebraska tort law in the employer-employee context, this court refused to restrict the doctrine to situations in which the injured person was employed by the owner of the premises. Therefore, in *Simon*, this court observed that

> a large construction project . . . has many dangers which are inherent in or normal in construction work. Under these circumstances a safe place to work requires that the owner in possession and control of the premises should recognize that the work is likely to create during its progress a peculiar risk of physical harm to others *unless special precautions are taken.*

(Emphasis in original.) 189 Neb. at 193, 202 N.W.2d at 164. Thus, if an owner of premises retains control over a contractor's work, the owner has a duty to use reasonable care in taking measures to prevent injury to employees who are working on the premises.

As OPPD points out, in *Hand v. Rorick Constr. Co.*, 190 Neb. 191, 206 N.W.2d 835 (1973) and *Sullivan v. Geo. A. Hormel and Co., supra,* we required that an owner must have retained "control of the premises" before liability could be imposed for injuries sustained by a contractor's employee. Although an owner generally relinquishes possession of the property during construction, and, thus, is not in "control of the premises," an owner might maintain "possession" if the owner's "involvement in overseeing the construction is 'substantial.' " *Farris v. General Growth Development Corp.*, 354 N.W.2d 251, 254 (Iowa App. 1984) (citing *Lunde v. Winnebago Industries, Inc.*, 299 N.W.2d 473 (Iowa 1980).

Consequently, we turn to the question whether OPPD's involvement in the construction process was sufficient to establish a duty to prevent injury to Eldon Parrish. Construing the evidence in the light most favorable to Karen Parrish, see *Dowis v. Continental Elev. Co.*, 241 Neb. 207, 486 N.W.2d 916 (1992), it appears that OPPD did retain substantial control over the premises and had the authority to require that Hawkins and Northwest observe adequate safety precautions. Under the OPPD-Hawkins contract, OPPD had the right to require whatever "may be necessary to secure the safe and proper

coordination of the progress of Work under this contract." The OPPD-Hawkins contract in its entirety was incorporated into the Hawkins-Northwest subcontract. Both contracts expressly required safety in work at the construction site.

Pursuant to the OPPD-Hawkins contract, OPPD reserved the right to inspect all work at the construction site and suspend "unsafe [work] until appropriate corrective measures have been taken," and even take over work in the project if for "any reason whatsoever [Hawkins] shall fail to carry on said Work in an acceptable manner." OPPD's personnel at the construction site were active participants, not just passive observers, in the over-all work done at the construction site. Steven Bottum directed the manner in which some construction work was done. Marc Nichols, in addition to overseeing work at the project, directed safety concerns to Hawkins for correction and compliance with the Occupational Safety and Health Act. All this indicates that OPPD, as authorized by its contract, went beyond simply watching work in progress to assure that the completed project complied with its plans and specifications. Also, the gist of testimony from Schultz and Tackett is that the workplace for steel workers at the construction site failed to conform with governmental safety regulations and that OPPD, as the result of its active role in the project, had the obligation to eliminate that noncompliance. Thus, there is a factual question concerning the precise control that OPPD exercised over work on its new building. Correspondingly, whether OPPD's control over the project was sufficient to impose the duty to protect Eldon Parrish from the hazard of falling to his death is an issue of material fact. See *Dowis v. Continental Elev. Co., supra.* Although OPPD offered several affidavits reciting that OPPD exercised no authority or control over the construction process, the evidence presented for the summary judgment raises a factual question in reference to Karen Parrish's allegations that OPPD had a duty to provide a safe place to work for construction workers on the OPPD project.

*Nondelegable Duty.*

"A nondelegable duty means that an employer of an independent contractor, . . . by assigning work consequent to a

duty, is not relieved from liability arising from the delegated duties negligently performed." *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 213, 376 N.W.2d 301, 309 (1985). Accord, *McKinstry v. County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988); *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986). "Liability for breach of a nondelegable duty is an exception to the general rule that one who employs an independent contractor is not liable for the independent contractor's negligence." *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 885, 485 N.W.2d 170, 178 (1992).

In *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972) this court acknowledged that an owner of premises has a nondelegable duty to provide a safe place for work by a contractor's employee, that is, a duty which "cannot be delegated or avoided by contract where the owner retains possession and control of the premises." 189 Neb. at 194, 202 N.W.2d at 164. An owner's nondelegable duty " 'is based upon the theory that certain responsibilities of a principal are so important that the principal should not be permitted to bargain away the risks of performance.' " *Erickson v. Monarch Indus.*, 216 Neb. 875, 879-880, 347 N.W.2d 99, 105 (1984) (quoting *Arsand v. City of Franklin*, 83 Wis. 2d 40, 264 N.W.2d 579 (1978)). Nondelegable duties include the duty of an owner in possession and control of premises to provide a safe place for work by a contractor's employee, see *Simon, supra*; a duty imposed by statute or rule of law, see *McKinstry v. County of Cass, supra*; and the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers, including work that is dangerous in the absence of special precautions, see *Rooney v. United States*, 634 F.2d 1238 (9th Cir. 1980). The aspect of special risks, dangers, and precautions is discussed later in reference to Hawkins.

If OPPD maintained possession and control of the construction site, OPPD had the nondelegable duty to provide a safe place for Northwest's employees to work under the Hawkins-Northwest subcontract. Considering the evidence in a light favorable to Parrish, see *Dowis v. Continental Elev. Co., supra*, we conclude that a factual question exists whether

OPPD retained possession and control over the construction site and, therefore, had the nondelegable duty to provide a safe place for Eldon Parrish to work at the construction site.

## HAWKINS' DUTY

" 'A general contractor, in control of the premises where work performance under a contract with the owner is being carried out, owes a duty to persons rightfully on the premises to keep the premises in a reasonably safe condition while the contract is in the course of performance.' " *McKinstry v. County of Cass*, 228 Neb. at 744, 424 N.W.2d at 329 (quoting *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981)).

In *Farris v. General Growth Development Corp.*, 354 N.W.2d 251 (Iowa App. 1984), a case strikingly similar to the Parrish case, a subcontractor's employee brought a negligence action against the general contractor (GGDC) for injuries which the employee sustained when he fell from a third floor deck at a construction site. In affirming a verdict for the employee, the court held that the general contractor, having possession of and control over the premises, had the duty to provide a safe place to work for the plaintiff as an employee of the subcontractor, and that such duty could not be contractually delegated to the subcontractor. In *Farris*, the court noted, "[t]he duty imposed upon GGDC, as general contractor, to exercise reasonable care to prevent injuries on the job site may be premised upon its possession and control of the premises," 354 N.W.2d at 254, and stated:

> Normally when a general contractor has a supervisor on the site, it will be able to exercise control over the premises. . . . GGDC's supervisor, Dick Cable, was in charge of coordinating all subcontractors and inspecting the work as it was completed on this job. Cable had a trailer on the job site and was present on the construction site daily.

354 N.W.2d at 254. Moreover, when a general contractor assumes a contractual duty for the safety of workers at a construction site, the contractor's duty cannot be delegated to a subcontractor. See *Farris, supra*. See, also, *Hickman v. Parks*

*Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956). See, further, *Giarratano v. The Weitz Co., Inc.*, 259 Iowa 1292, 1305, 147 N.W.2d 824, 832 (1967): " 'Where one person owes another a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property. This duty is nondelegable.' " (Quoting *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226 (1937).)

A conclusion analogous to that in *Farris* was expressed in *C. B. & Q. R. R. Co. v. Clark*, 26 Neb. 645, 42 N.W. 703 (1889), wherein the railroad had hired a contractor to lay a 29-mile section of track. The railroad agreed to furnish all engines, cars, and the men needed to operate the equipment. This court determined that, because the railroad had control over the men and equipment used by the contractor, the railroad was liable for injuries caused by its employees while working for the contractor. Similarly, § 414 of Restatement (Second) of Torts (1965), provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

The rule imposing liability on an employer who retains control over work of an independent contractor

> is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.

Restatement (Second) of Torts § 414 Comment b. See, also,

*Smith v. United States*, 497 F.2d 500 (5th Cir. 1974); *Summers v. Crown Construction Company*, 453 F.2d 998 (4th Cir. 1972); *Weber v. Northern Ill. Gas Co.*, 10 Ill. App. 3d 625, 295 N.E.2d 41 (1973). Thus, to impose liability on a general contractor for injury to a subcontractor's employee, the general contractor must have (1) supervised the work that caused the injury to the employee; (2) had actual or constructive knowledge of the danger which ultimately caused the injury; and (3) had the opportunity to prevent the injury, but negligently failed to prevent the injury.

Under its contract with OPPD, Hawkins was required to keep itself informed about existing conditions at the construction site and "[a]t all times during the performance of the Work, [Hawkins] shall exercise precaution for the protection of persons and property." Also, Hawkins agreed to correct any unsafe condition and was "fully responsible for the protection of all persons including members of the public, employees of the District, other contractors or subcontractors . . . ." Unquestionably, Eldon Parrish was within the class of persons entitled to protection under Hawkins' contractual duty. Schultz and Tackett testified about violations of the Occupational Safety and Health Act, such as the absence of a safety net and adequate floor beneath the location of Parrish's work on the steel framework for OPPD's building. A violation of a safety regulation is evidence of negligence. See, *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992); *Tank v. Peterson*, 219 Neb. 438, 363 N.W.2d 530 (1985). Even under its subcontract with Northwest, Hawkins had contractual authority to prescribe and order "safety measures" for Northwest's work and take steps to correct any noncompliance by Northwest in its subcontract with Hawkins. Schultz and Tackett also testified about the readily observable and dangerous condition existing at the construction site as the result of the absent safety net or floor beneath Northwest's steel workers. Both Schultz and Tackett concluded that Hawkins had breached its duty to see that Northwest's work was being done in a safe manner. Further, the evidence indicates that Hawkins was in control of the premises while work was being performed pursuant to its contract with OPPD. Because

Hawkins had control over the construction site, the question whether Hawkins knew or should have known of the danger which caused Eldon Parrish's death and whether Hawkins had the opportunity to correct that danger were disputed issues of material fact.

Apart from a duty to provide a safe place to work, Hawkins may be liable for failing to ensure that Northwest utilized adequate safety precautions. Holding that a general contractor may be liable for injury sustained when a subcontractor's employee fell through a roof at a construction site, the Supreme Court of Michigan explained in *Funk v General Motors Corp*, 392 Mich. 91, 104, 220 N.W.2d 641, 646 (1974):

> The policy behind the law of torts is more than compensation of victims. It seeks also to encourage implementation of reasonable safeguards against risks of injury.
>
> Placing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas.

The court further stated that it was "part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." 392 Mich. at 104, 220 N.W.2d at 646. See, also, *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972). As expressed in Restatement (Second) of Torts § 416 (1965), if a general contractor hires an independent contractor to perform work which the general contractor "should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken," the general contractor may be liable for physical harm caused to employees of the subcontractor if the general contractor fails to exercise reasonable care to take such precautions, even though

the general contractor has provided, in the contract or otherwise, that the subcontractor be responsible for such precautions. Comment d of § 416 distinguishes a "peculiar risk" from "the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions." Therefore, notwithstanding a contractual provision to the contrary, a general contractor may be liable for the negligence of a subcontractor when injury results from the general contractor's failure to ensure that precautions are taken against special hazards inherent in the work of the subcontractor. See, *Simon v. Omaha P. P. Dist., supra*; *Frickel v. Lancaster County*, 115 Neb. 506, 213 N.W. 826 (1927); Restatement (Second) of Torts § 416 (1965). Cf. *Palmer v. The City of Lincoln*, 5 Neb. 136 (1876) (when an injury results directly from the acts which a contractor agrees and is authorized to do, the party who employs the contractor and authorizes the work may also be liable to the injured person).

Without question, steel construction work involves risks which an average person does not ordinarily encounter on a day-to-day basis. Consequently, because Eldon Parrish's work involved a "peculiar risk," Hawkins was required to exercise reasonable care to ensure that Northwest utilized proper safety precautions, regardless of any language to the contrary in the contract between Hawkins and Northwest.

Without restating all the evidence which we have noted relative to the summary judgment hearing, we conclude that there was evidence sufficient to present an issue of material fact concerning Hawkins' duty to protect Eldon Parrish from harm and whether Hawkins breached that duty by failing to exercise due care to protect Eldon Parrish from the hazard that resulted in his death.

## CONCLUSION

At the hearing for summary judgment in the Parrish case, the evidence presented issues of material fact as previously noted. Summary judgment was unavailable under the circumstances. Therefore, we reverse the judgments of the

district court and remand this cause to the district court for further proceedings. Since we have reversed the summary judgments granted to OPPD and Hawkins, it is unnecessary for us to consider Karen Parrish's assignment of error concerning affidavits which OPPD and Hawkins offered and which were used as a basis for the summary judgments.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GRANT, J., not participating.