JOAN KIME, APPELLANT, V. WILLIAM A. HOBBS, APPELLEE.

562 N.W.2d 705

Filed May 2, 1997.   No. S-95-843.

M.J. Bruckner, of The Bruckner/Ballew Law Firm, P.C., and Bill Quigley, of Quigley, Dill & Quigley, for appellant.

C.J. Gatz, of Jewell, Gatz, Collins, Fitzgerald & DeLay, and Richard L. Spittler for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

Plaintiff-appellant, Joan Kime, was seriously injured in a collision between the vehicle in which she was a passenger and a tractor-livestock trailer unit driven by Edward F. Yelli. Yelli owned the truck-tractor, and defendant-appellee, William A. Hobbs, a Holt County farmer-rancher, owned the livestock trailer. At the time of the accident, Yelli was hauling cattle for Hobbs. The district court entered summary judgment in favor of Hobbs, finding that there were no questions of material fact at issue, that Yelli was an independent contractor and not an agent of Hobbs, that Yelli was not engaged in an inherently dangerous activity such as to impose strict liability on Hobbs, and that Hobbs had not been negligent in hiring Yelli. Kime timely appealed the judgment of the district court, and we granted Kime's petition to bypass review by the Nebraska Court of Appeals.

## I. FACTUAL BACKGROUND

On October 22, 1990, Kime was a passenger in a vehicle which was stopped facing south on U.S. Highway 83 north of Valentine, Nebraska. The driver of the vehicle, Betty Sullivan, was preparing to turn left into a farm driveway when her vehicle was struck from the rear by a tractor-livestock trailer unit being driven by Yelli. The collision killed Sullivan and produced injuries that resulted in permanent paralysis below the waist for Kime.

Yelli owned the tractor; the livestock trailer was owned by Hobbs. At the time of the accident, Yelli was hauling a load of cattle belonging to Hobbs from Hobbs' ranch near Valentine to Hobbs' feedlot east of O'Neill, Nebraska.

Hobbs was a large-scale farmer, rancher, cattle feeder, and cattle order buyer in north central and northeast Nebraska. The nature of Hobbs' business necessitated the use of a number of trucks and drivers to transport cattle. Hobbs owned approximately eight livestock trailers; however, Hobbs did not own any tractors with which to pull the trailer units. Therefore, he relied on a number of truckers in the Ewing, Nebraska, area to pull the trailers on an as-needed basis. Hobbs' son-in-law, Randy Hawk, served as the dispatcher for the trucking part of the business.

Hawk was responsible for dispatching trucks to haul Hobbs' cattle and cattle that Hobbs had order bought for other feedlots. When Hobbs needed trucks, he would call Hawk and let him know the number of loads of cattle. Hawk would find out what trucks were available by calling the drivers on a list he maintained. Once he found an available truckdriver, Hawk would advise the driver where and when to pick up the load.

Yelli started hauling for Hobbs in February 1990. Yelli owned a single truck-tractor, which he hired out for profit. He supplied the oil, gas, grease, maintenance, and repairs for his own truck. There was no written agreement between Hobbs and Yelli defining their relationship; however, both Hobbs and Yelli claimed in separate affidavits that it was their intention to establish an independent contractor relationship.

Hawk provided the drivers with a form on which to record their mileage. In October 1990, the drivers were paid approximately $1.40 per loaded mile for the most direct route between

the picking up and unloading points. Yelli testified that he took the route he wanted to take and that there was not a special route a driver was required to take. If a detour was necessary because a road was blocked or if the trucker drove around a weigh scale, the trucker was paid for the additional miles. Hobbs reimbursed the truckers for overweight tickets unless the ticket was the driver's fault. In addition, Hobbs reimbursed Yelli for weight tickets Yelli paid when he weighed loads of cattle, for work done on the trailers, and for washing out the trailers.

The drivers were paid twice each month. Yelli was paid nonemployee compensation during 1990, and Hobbs filed a Form 1099 with the Internal Revenue Service. Hobbs did not deduct Social Security, federal income tax, state income tax, or other payroll taxes from these payments. Yelli provided liability insurance on his truck; Hobbs provided collision coverage and licensing for his trailers.

Yelli had no authority to use Hobbs' livestock trailer other than to load Hobbs' cattle, take them to their destination, and unhook the trailer. However, Hawk and the driver could arrange to use the trailer to haul another rancher's cattle if the trailer was not being used or if they were waiting at a sale and a short haul was available. When a driver was unavailable to drive his or her own tractor, he or she could hire another driver to drive the tractor on hauls for Hobbs without requesting permission to do so.

A number of the other drivers on Hawk's list pulled cattle for Hobbs on a more regular basis than did Yelli. In October 1990, Yelli was driving for other people in addition to Hobbs. Yelli owned his own grain trailer and his own refrigeration trailer and, prior to the job at issue, had been hauling corn for another rancher. Yelli testified that he never turned down a grain-hauling job to wait for Hawk to call him to haul cattle for Hobbs. Yelli stated that it was more advantageous financially to use his own trailer to haul corn than to pull Hobbs' trailer to haul cattle. Between October 1 and 22, Yelli made four trips that were dispatched by Hawk.

Kime's second amended petition set forth three theories of liability: (1) that Yelli was the agent, employee, and servant of Hobbs; (2) that the transportation of a shifting load of cattle in

a loaded livestock trailer being pulled by a tractor is an ultra-hazardous and dangerous activity, imposing on Hobbs a non-delegable duty to see that his trailer and cattle were transported in a nonnegligent manner; and (3) that Hobbs was negligent in hiring Yelli.

On September 26, 1994, Hobbs filed a motion for summary judgment. Following two evidentiary hearings, the district court found that there was no genuine issue as to any material fact, that Yelli was an independent contractor, that transportation of cattle in a livestock trailer being pulled by a tractor was not an inherently dangerous activity, and that there was no evidence Hobbs was negligent in hiring Yelli. Accordingly, the district court granted Hobbs' motion for summary judgment and dismissed Kime's second amended petition with prejudice. This appeal followed.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Mapes Indus. v. United States F. & G. Co., ante* p. 154, 560 N.W.2d 814 (1997); *Robertson v. School Dist. No. 17, ante* p. 103, 560 N.W.2d 469 (1997). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Slagle v. J.P. Theisen & Sons*, 251 Neb. 904, 560 N.W.2d 758 (1997); *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997).

## III. ASSIGNMENTS OF ERROR

Kime assigns that the district court erred in (1) granting summary judgment in favor of Hobbs on the issue of whether Yelli was an agent of Hobbs, (2) granting summary judgment in favor of Hobbs on the issue of whether there was a nondelegable duty because Hobbs was engaged in an inherently dangerous activity, and (3) granting summary judgment in favor of Hobbs on the issue of whether Hobbs was negligent in hiring Yelli.

## IV. ANALYSIS

### 1. INDEPENDENT CONTRACTOR

Kime first assigns that the district court erred in finding that Yelli was an independent contractor as a matter of law and, therefore, erred in granting summary judgment in favor of Hobbs. Kime asserts that questions of fact remained as to Yelli's status as either an independent contractor or an agent of Hobbs, that the district court failed to view the evidence in the light most favorable to Kime, and consequently, that the district court should not have granted Hobbs' motion for summary judgment.

The issue we must decide is whether, based on the facts before us, Yelli is an independent contractor as a matter of law and, accordingly, whether the district court properly entered summary judgment in favor of Hobbs.

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997); *State Farm v. D.F. Lanoha Landscape Nursery*, 250 Neb. 901, 553 N.W.2d 736 (1996). Ordinarily, a party's status as an employee or an independent contractor is a question of fact. However, where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. See, *Pettit v. State*, 249 Neb. 666, 544 N.W.2d 855 (1996); *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995). By stating "where the inference is clear," this court means that there can be no dispute as to pertinent facts pertaining to the contract and the relationship of the parties involved and only one reasonable inference can be drawn therefrom. *Pettit v. State, supra*. Thus, if neither the facts nor the inferences to be drawn from those facts are in dispute, the determination of Yelli's status should be made as a matter of law.

In determining whether or not a truckdriver such as Yelli is an employee, as distinguished from an independent contractor, there is no single test by which the determination may be made. Such a determination must be made from all the facts in the case. See *Larson v. Hometown Communications, Inc., supra*. Whether an agency exists depends on the facts underlying the

relationship of the parties irrespective of the words or terminology used by the parties to characterize or describe their relationship. *Id.* Thus, while Yelli and Hobbs submitted affidavits that averred in conclusory terms their intention to create an independent contractor relationship, it is the underlying facts that we examine in order to determine the true nature of the relationship.

There are 10 factors which are considered in determining whether a person is an employee or an independent contractor: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Pettit v. State, supra.*

The right of control is the chief factor distinguishing an employment relationship from that of an independent contractor. *Id.* In examining the extent of the employer's control over the worker in this context, it is important to distinguish control over the means and methods of the assignment from control over the end product of the work to be performed. An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done *only as to the result of the work and not as to the methods or means used. Id.* Even the employer of an independent contractor may, without changing the status, exercise such control as is necessary to assure performance of the contract in accordance with its terms. *Larson v. Hometown Communications, Inc., supra.*

While Hobbs did exercise some control over the transportation of the cattle, this control was to ensure the provision of the end product that was contracted for: the conveyance of the cattle from the ranch to the feedlot for an agreed-upon price. Thus, the fact that Hobbs determined the time and place that the cattle were to be picked up and delivered and that he agreed to pay a set amount per mile for the shortest route between the two points, does not evidence control over the means and methods used in performing the work. Hobbs did not exercise control over the manner in which Yelli operated the tractor-trailer unit, did not control the route actually taken, and did not control who would actually drive the tractor, Yelli or someone hired by Yelli. Thus, the methods used to perform the work were not subject to the control of Hobbs.

The remaining factors also clearly indicate that Yelli was an independent contractor rather than an employee. Yelli was engaged in a distinct occupation or business. He owned his own tractor, a grain trailer, and a refrigeration trailer which he hired out for profit. Yelli supplied the instrumentality of the work, the tractor, and he provided the gas, grease, oil, maintenance, repairs, licensing, and insurance for the tractor. Accordingly, Yelli made decisions about what to haul for whom based on which jobs would yield the best return and did not haul solely for Hobbs. In addition, Yelli was paid for the jobs he completed, and Hobbs did not withhold taxes from these payments.

Therefore, even when viewing the evidence in a light most favorable to Kime, we conclude that the district court did not err in finding, as a matter of law, that Yelli was an independent contractor. Accordingly, this assignment of error is without merit.

### 2. HOBBS' DUTIES

Generally, the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994); *Fitzpatrick v. U S West, Inc.*, 246 Neb. 225, 518 N.W.2d 107 (1994). There are two recognized exceptions to the general rule. The employer of an independent contractor may be vicariously liable to a third party (1) if the employer retains control over the contractor's

work or (2) if, by rule of law or statute, the employer has a non-delegable duty to protect another from harm caused by the contractor. *Id.*

### (a) Retention of Control

While Hobbs did not retain sufficient control over Yelli's work to subject him to liability for the acts of Yelli as an agent or employee, we must determine whether Hobbs retained some control over the relevant work and whether he is therefore liable for a failure to exercise reasonable care in the use of that control. Restatement (Second) of Torts § 414 at 387 (1965) provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

See, also, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993).

To impose liability on the employer of an independent contractor, the employer must have (1) supervised the work that caused the injury; (2) had actual or constructive knowledge of the danger which ultimately caused the injury; and (3) had the opportunity to prevent the injury, but negligently failed to prevent the injury. See *id.* Kime clearly fails to meet the above criteria in the instant case. Having the right to control and supervise the work in this context implies having the ability to oversee and direct the manner in which the work which caused the injury is carried out. As we have already concluded, Hobbs had no control over the manner in which Yelli operated his vehicle. While Hobbs may have retained control over particular aspects of the transportation process, such as the time and place of pickup and delivery and the rate of payment, this supervisory control did not extend to the operation of the tractor-livestock trailer unit itself. Consequently, Hobbs did not supervise the relevant work and had no opportunity to prevent the conduct that led to the damages alleged in this case.

Accordingly, we conclude that Hobbs did not retain the type of control over the activities that led to the accident sufficient to subject him to liability.

### (b) Inherently Dangerous Activity

Kime next asserts that the district court erred in determining as a matter of law that the transportation of cattle is not an inherently dangerous activity which would impose on Hobbs a nondelegable duty to see that his trailer and cattle were transported in a nonnegligent manner. Kime contends that even if Yelli is an independent contractor, Hobbs may not escape liability for Yelli's negligence because he was engaged in inherently dangerous work.

We must determine whether or not the transportation of cattle in a tractor-livestock trailer unit is an inherently dangerous activity such that it imposes a nondelegable duty on the employer of an independent contractor.

A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. *Parrish v. Omaha Pub. Power Dist., supra.* One such nondelegable duty is the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers, including work that is inherently dangerous in the absence of special precautions. See, *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994); *Parrish v. Omaha Pub. Power Dist., supra*; the Restatement, *supra*, §§ 416 and 427. A special or peculiar risk is one that "differ[s] from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions." *Id.*, § 416, comment *d.* at 397. See, also, *Parrish v. Omaha Pub. Power Dist., supra.*

We have generally held that a motor vehicle is not an inherently dangerous instrumentality. *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 238 N.W.2d 443 (1976); *Christensen v. Rogers*, 172 Neb. 31, 108 N.W.2d 389 (1961); *Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956). However, we have not specifically addressed whether the operation of a loaded tractor-livestock trailer unit presents a peculiar risk of danger.

Other jurisdictions have considered whether a loaded truck presents a peculiar risk so as to impose a nondelegable duty on

the employer of an independent contractor and have concluded that the risk that there will be a mechanical malfunction, that the truck will be overloaded, or that the independent contractor will exceed the speed limit are "ordinary" risks that arise in the normal course of the work and which require only "ordinary" precautions. See, *Ek v. Herrington*, 939 F.2d 839 (9th Cir. 1991) (holding that transportation of logs did not generally pose peculiar risk of harm); *Williams v. Tenn. River Pulp & Paper*, 442 So. 2d 20 (Ala. 1983) (holding that hauling of pulp timber does not constitute peculiar risk of harm). See, also, Restatement (Second) of Torts § 416, comment *d.* (1965). However, when a commodity such as several tons of logs is to be transported, the employer of an independent contractor may be subject to liability for failure to take special precautions to anchor it securely. *Ek v. Herrington, supra.* See, also, the Restatement, *supra* at comment *d.*

Kime makes no allegation that the cattle were improperly secured in the trailer. Rather, she alleges that Yelli was negligent in his operation of the unit in failing to keep a proper lookout, failing to have his vehicle under reasonable control, and operating his vehicle at an excessive rate of speed. These risks attendant to the operation of the vehicle are precisely the risks that the employer of an independent contractor is justified in presuming that the contractor will act to avoid. We hold that the transportation of cattle in a tractor-trailer under normal conditions is not an inherently dangerous activity such that it imposes a nondelegable duty on the employer of an independent contractor to ensure that the cattle are transported in a nonnegligent manner.

Accordingly, we determine that the district court did not err in finding that Hobbs was not engaged in an inherently dangerous activity which presented peculiar risks and that Hobbs, therefore, had no nondelegable duty to ensure that the cattle were transported in a nonnegligent manner.

### (c) Negligent Hiring

Kime's third theory of liability is that Hobbs was negligent in hiring Yelli. Kime relies on our holding in *Greening v. School*

*Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986), that an employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care in selecting an employee, even if such employee is an independent contractor. Kime contends that Yelli had a driving record which evidenced disregard for the safety of others on the highway, that Yelli's tractor had defective brakes, and that Yelli was classified as a high risk by the insurance industry.

Regarding the latter two allegations, the district court correctly determined that there was *no* evidence in the record to support Kime's contentions. The district court received into evidence Yelli's affidavit that affirmatively averred that his truck-tractor did not have defective brakes at the time of the accident. Yelli further averred in the affidavit that he had never been classified as a high-risk driver by the insurance industry and that he was insured by a standard liability insurance policy.

With reference to Kime's allegation that Yelli had a driving record which evidenced disregard for the safety of others on the highway, Kime points to Hobbs' deposition testimony that he had not checked the driving record of any of his "employees" prior to the accident. The district court had received into evidence Yelli's affidavit and driving abstract that showed Yelli had received five citations for speeding, one citation for violating a stop sign, and one citation for overloading his vehicle between the years 1987 and 1990. In his affidavit, Yelli averred that he had never been issued a citation for a serious traffic offense. In *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997), we stated that after the party moving for summary judgment has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party.

In the instant case, when viewing the evidence in a light most favorable to Kime, the district court correctly determined that Yelli's driving record did not evidence disregard for the safety of others and that no other facts demonstrated that Hobbs was negligent in hiring Yelli. Accordingly, this last assignment of error is without merit.

## V. CONCLUSION

In accordance with the foregoing analysis, we conclude that the district court was correct in granting Hobbs' motion for summary judgment on all theories of recovery.

AFFIRMED.