# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2367NE

_____

Paul Danny Jordan,      *
     *
         Appellant,      *
     *
         v.      *    On Appeal from the United
     *    States District Court
     *    for the District of
NUCOR Corporation, a Delaware      *    Nebraska.
Corporation, and Carlisle Construction      *
Co., Inc., a Kentucky Corporation,      *
     *
         Appellees.      *

_____

Submitted: February 15, 2002
Filed: July 8, 2002

_____

Before HANSEN, Chief Judge, HEANEY and RICHARD S. ARNOLD, Circuit
     Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Paul Danny Jordan was injured when a piece of steel girder fell from a crane
and struck him while he was working at a construction site in Norfolk, Nebraska. Mr.
Jordan filed a negligence action in the District Court of Douglas County, Nebraska,
against the owner of the construction site, NUCOR Corporation, and the owner and
lessor of the crane involved in the accident, Carlisle Construction Company.
NUCOR and Carlisle removed the case to the District Court on the basis of diversity

jurisdiction. Both parties consented to the exercise of jurisdiction by a United States Magistrate Judge.[1] NUCOR and Carlisle moved for summary judgment. The Court granted both motions. Mr. Jordan appeals.

Mr. Jordan argues that the District Court erred in granting summary judgment in favor of NUCOR for the following reasons: first, that the Court erred in determining that NUCOR was not acting as its own general contractor because it maintained possession of the premises and was substantially involved in overseeing the construction at the site; second, that the Court misinterpreted Nebraska law by failing to hold that NUCOR, acting as a general contractor, had a nondelegable duty to provide a safe place for a contractor's employees to work; third, that the Court erred in failing to determine that NUCOR retained enough control to implement whatever safety precautions it deemed necessary, including compliance with OSHA regulations; fourth, that the Court erred in failing to categorize NUCOR as a "multi-employer" subject to OSHA regulations; and fifth, that the Court erred in failing to hold that the use of the crane constituted a peculiar risk or inherently dangerous activity giving rise to liability. We affirm the decision of the District Court in all respects with regard to NUCOR.

Mr. Jordan contends that the District Court erred in granting summary judgment in favor of Carlisle for the following reasons: first, that the District Court failed to hold that the crane was an inherently dangerous instrument and that Carlisle, as lessor, was subject to liability; second, that the Court failed to hold Carlisle liable for the negligent performance of its undertaking as the crane's lessor; third, that the Court erred in holding that the crane horn was operational and sounded before the lift that culminated in Mr. Jordan's injuries; fourth, that the Court erred in failing to

---

[1]The Hon. William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska, transferred the case to the Hon. Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

determine that Mr. Jordan was entitled to the presumption that he would have heeded a proper warning had one been given; and fifth, that the Court erred in failing to infer that Carlisle failed to produce certain evidence under its control because that evidence would have been unfavorable to Carlisle. We affirm the decision of the District Court in all respects with regard to Carlisle.

## I.

Mr. Jordan was an employee of Lexicon, Inc.,[2] one of five independent contractors constructing an addition to the NUCOR steel plant in Norfolk, Nebraska. On the date of the accident, Lexicon employees were fabricating deflector shields at the NUCOR site. This process involved attaching pieces of steel to a crane in order to move them to another area where the shields would be assembled. The crane was being operated by Kenneth Spencer, the equipment foreman at the job site. Immediately before the accident, Mr. Spencer lifted a load, consisting of several pieces of steel, six to eight inches off the ground, but determined that the load was not level. He then lowered it back to the ground, adjusted the load, and lifted it again. Mr. Spencer testified that he sounded the horn when the load was lifted off the ground in order to warn other employees located near the crane. After being lifted twelve to fifteen feet, the load started to fall apart. Mr. Spencer tried to swing it to the side to avoid causing any injuries. When he did so, a piece of steel fell from the crane and struck Mr. Jordan, who was standing below on a platform. Mr. Jordan fell fifteen feet off the platform, and sustained injuries to his back, lungs, ribs, and shoulder.

---

[2]Schueck Steel Company is a subsidiary of Lexicon, Inc., and is referred to as Mr. Jordan's employer many times throughout both of the appellants' briefs and in various depositions.

The construction site where the accident occurred is owned by NUCOR. The relationship between NUCOR and Lexicon is that of an owner and an independent contractor. The contract between the two parties specifically states:

> The relationship established by this Agreement is solely that of Owner and Contractor. Nucor is not acting, and nothing contained within this Agreement shall constitute Nucor, as a general contractor or construction manager. Nothing contained within this Agreement shall constitute Contractor as an agent, partner or joint venturer of Nucor and nothing contained herein shall grant Contractor the right or authority to create any obligation of any kind on behalf of Nucor.

Joint Appendix (J.A.) 48. NUCOR employees did participate in deliveries that took place on the construction site, and NUCOR employees were located throughout the plant. However, NUCOR employees did not instruct Lexicon employees how to perform their individual duties. Mr. Spencer testified that he was never told by NUCOR how to operate the crane or what particular job was to be completed on any given day. More specifically, he was not supervised with respect to, or directed to pick up, the load that injured Mr. Jordan by any NUCOR employee. J.A. 304. Additionally, Mr. Jordan stated that he never talked to the NUCOR employees present at the construction site. J.A. 249.

NUCOR did retain the right to ensure that the contract was being carried out in accordance with the plans and specifications of the project, but only in certain situations did NUCOR have the right to gain control over the entire project. The contract specifically provides that in the case of a default or if Lexicon "neglects to carry out the Work in accordance with the Contract Documents or fails to perform any provision of this Agreement," NUCOR has the right to "terminate the employment of Contractor and take possession of the job Site and of all materials, equipment, tools, construction equipment and machinery thereon owned by

-4-

Contractor and may finish the Work to be performed by Contractor by whatever method it deems expedient."[3]  J.A. 54.

NUCOR also specifically delegated all safety duties to Lexicon according to the terms of the contract.  This provision states:

> Contractor agrees to use its best efforts to insure the safety of (a) all employees on the work force and all other persons who may be affected by the Work, (b) the Work, itself, and (c) all material and equipment to be incorporated into the Work, and any other property at the job site or adjacent to the Work.

J.A. 47.  Lexicon held weekly safety meetings for employees and checked certain instrumentalities, including the crane involved in the accident, on a weekly basis.

The crane involved in the accident was leased to Lexicon on September 26, 1996, by Carlisle.  The Equipment Rental Agreement delegated the duty to repair and maintain the crane to Lexicon.[4]  The record indicates that the crane was delivered with a safety horn, and that this horn was functioning properly when it was delivered. In November 1996, Carlisle was notified that there were problems with the horn.  A

---

[3]The contract also states that NUCOR may retain control if "in the opinion of NUCOR, [the contractor] refuses or fails to supply enough properly skilled workmen or proper materials or, if in the opinion of NUCOR, it fails to prosecute diligently the Work to be performed hereunder. . .."  J.A. 53-54.

[4]The contract provides, "The Lessee, at its own cost and expense, shall keep the equipment in good repair, condition and working order and shall furnish any and all parts, mechanisms and devices required to keep the equipment in good mechanical and working order."  Jordan v. Carlisle Const. Co., No. 8:99CV162, slip op. at 7 (May 3, 2001).

new horn button was ordered and sent to Lexicon. There is no record of any repairs sought or made near the time of Mr. Jordan's accident in March 1997.[5]

Mr. Spencer, who was operating the crane, testified that on the date of the accident, he sounded the horn several times before the lift that resulted in Mr. Jordan's injuries. J.A. 405. He stated that he also remembered checking the horn the week before the accident and that there were no problems with it. Mr. Spencer specifically testified that he heard the horn sound when he picked up the load that injured Mr. Jordan. J.A. 407. Marvin Wallace, the superintendent of the construction site, also testified that the day before the accident, he remembered that the crane was in working order, though he could not recall whether or not he heard the horn sound on that day. J.A. 333.

These facts are disputed by Mr. Jordan. He alleges that the warning horn on the crane was not working on the day of the accident, nor was it working during the four days before the accident. He testified that another Lexicon employee, Billy Dean, had been verbally warning other employees when the crane was about to pick up a load. J.A. 239. However, Mr. Jordan stated that Mr. Dean did not warn Mr. Jordan before the lift that resulted in his injuries, nor did Mr. Jordan hear the horn sound.

---

[5]Mr. Spencer testified that there was another problem with the crane's horn switch that developed at some point before the accident, but no date is provided for this incident. Evidently, the horn switch located in the center of the steering wheel was not functioning correctly. A local mechanic relocated the switch to the steering panel. Carlisle was not notified of this repair work. Mr. Spencer further testified that he never operated the crane when the horn was not working correctly. J.A. 304.

II.

Mr. Jordan contends that the District Court erred in granting summary judgment in favor of NUCOR and Carlisle. We review a grant of summary judgment de novo. Iowa Coal Min. Co. v. Monroe County, 257 F.3d 846, 852 (8th Cir. 2001). After reviewing the record in the light most favorable to the nonmoving party, the Court will affirm the decision if there are no genuine issues of material fact. Id.

In a diversity action for negligence, we apply the law of the forum state. Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001). Under Nebraska law, an action for negligence exists when a defendant owes a legal duty to a plaintiff, the defendant fails to discharge that duty, and damage results from the failure to perform the duty. Brown ex rel. Watts v. Social Settlement Ass'n., 610 N.W.2d 9, 11 (Neb. 2000).

## A. NUCOR Corporation

Mr. Jordan argues that the District Court erred in granting summary judgment in favor of NUCOR. He presents five arguments on appeal. We will address his first two arguments as one, as the second is dependent on the first. Mr Jordan argues that the District Court erred in failing to hold that NUCOR was the owner of the premises acting as its own general contractor because it maintained possession of the premises and was substantially involved in overseeing the construction at the NUCOR plant. He contends that because NUCOR was involved in construction decisions made at the site and because its employees were continuously present, NUCOR had a legal duty to protect him from harm.

Generally, the employer of an independent contractor has a duty to maintain the premises in a reasonably safe condition, but that duty is limited to latent defects

known to the owner but not to the independent contractor and his employees. Anderson v. Nashua Corp., 519 N.W.2d 275, 283 (1994). This duty does not require an employer to inspect equipment owned, directed, or controlled by an independent contractor. Whalen v. U.S. West Communications, Inc., 570 N.W.2d 531, 540 (Neb. 1997). However, if an employer maintains control over the contractor's work, or if the owner has substantial involvement in supervising the construction, the employer may have "a nondelegable duty to protect another from harm caused by the contractor." Parrish v. Omaha Pub. Power Dist., 496 N.W.2d 902, 909-10 (Neb. 1993). "A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed." Kime v. Hobbs, 562 N.W.2d 705, 713 (Neb. 1997). In order to be liable, an employer of an independent contractor must have supervised the work that caused the injury, had actual or constructive knowledge of the danger which caused the injury, and had the opportunity to prevent the injury, but negligently failed to do so. Id. at 712.

NUCOR was involved in the construction at the plant to a certain extent. It retained possession of the premises and maintained the right to take over control of the construction site in certain situations as specified by contract. Additionally, NUCOR employees were on site at the plant daily, and at least one employee, Lawrence Votruba, NUCOR's construction manager, had an office located on the construction site. J.A. 88. NUCOR employees also occasionally would watch the movement of particular materials at the site. J.A. 298. However, we do not agree with Mr. Jordan that NUCOR employees were so "substantially involved" with the construction project at the plant as to impose liability on NUCOR.

Though these employees were involved in sequencing the construction project and ordering materials, NUCOR employees did not instruct Lexicon employees how to perform their specific jobs or duties. J.A. 332. Mr. Jordan testified that he never spoke to any NUCOR employees when they were present at the construction site.

J.A. 249. Mr. Spencer, the construction foreman and crane operator, also testified that he did not discuss the particularities of his job with any NUCOR employee. Specifically, he stated that he was not told how to operate the crane, what particular job was expected to be completed on any specific day, or whether he was performing his job in accordance with the contract. J.A. 298. Additionally, with regard to the events that led to Mr. Jordan's injuries, Mr. Spencer testified that he was not supervised or directed to pick up the load that injured Mr. Jordan by any NUCOR employee. J.A. 304. Because NUCOR employees did not supervise the work that led to Mr. Jordan's injuries, and NUCOR was not substantially involved with the construction project, NUCOR did not exercise the control necessary to impose on it a nondelegable duty to protect Mr. Jordan from the injuries he sustained.[6]

Mr. Jordan also argues that NUCOR exercised contractual control over the construction project. We disagree. The evidence in the record indicates that NUCOR could interfere with the work on the project only in certain situations specified by contract, for example if Lexicon was in default. The contract does not give NUCOR the right to control the everyday activities of Lexicon, nor does it give NUCOR the right to micromanage the project. Moreover, the contract between NUCOR and Lexicon specifically held Lexicon responsible for ensuring the safety of all

---

[6]This holding is consistent with decisions by the Nebraska Supreme Court and our Court. See Dellinger v. Omaha Pub. Power Dist., 611 N.W.2d 132 (Neb. 2000) (holding no duty when contract delegated all safety issues and control of work to independent contractor); Whalen v. U.S. West Communications, Inc. , 570 N.W.2d 531, 538-40 (Neb. 1997) (holding no duty when owner's employees delivered equipment to construction site and were present at the time the injury occurred); Cook v. Nebraska Pub. Power Dist., 171 F.3d 626, 632 (8th Cir. 1999) (noting that the Nebraska Supreme Court has held that the mere presence and minor participation of an employee of a premises' owner does not suffice to show that owner retained control over the employees of an independent contractor, so as to be liable for negligence of contractor's employees).

employees, the work itself, and all materials and equipment used in the completion of the project.  J.A. 47.

Additionally, NUCOR cannot be held liable under a theory of premises liability.  Though NUCOR did have a duty to maintain the premises in a reasonably safe condition, that duty was limited to known latent defects created by the employer, of which the independent contractor and his employees did not have knowledge.  Mr. Jordan's injuries were not caused by any defect in the NUCOR plant premises.  Though his injuries occurred while working on site at the NUCOR plant, his injuries were allegedly caused by the failure of Lexicon employees to prepare the load in a safe manner, the failure to sound or hear the warning horn, or the failure of other Lexicon employees to warn Mr. Jordan verbally.  Because NUCOR was not involved in the operation or use of the crane and, by contract, Lexicon was responsible for all safety procedures at the plant, NUCOR did not violate its duty by failing to maintain its premises in a reasonably safe manner.

Mr. Jordan next argues that NUCOR's involvement in the construction project required it to implement whatever safety precautions it deemed necessary, including compliance with OSHA regulations.  Mr. Jordan cites the Restatement (Second) of Torts § 416 (1965) in support of this argument:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

A peculiar risk is one that "involve[s] some special hazard resulting from the nature of the work done, which calls for special precautions."  Kime, 562 N.W.2d at 713 (quoting Restatement (Second) of Torts § 416 (1965)).  However, an employer is not

liable even if a peculiar risk exists, when an injury results from another's collateral act of negligence. Dellinger, 611 N.W.2d at 138-39.

Even assuming that a peculiar risk was involved in the accident, which we doubt, the injuries that Mr. Jordan sustained were allegedly due to the failure of Lexicon employees to prepare the load in a safe manner or the failure of Lexicon employees to provide Mr. Jordan with an adequate warning, either by horn or otherwise. NUCOR was not involved in the lift that injured Mr. Jordan in any way. Mr. Spencer was not told by any NUCOR employee how to load or lift the steel girder that fell from the crane. Additionally, NUCOR was not responsible for the operation, use, or maintenance of the crane that was involved in the accident. Because the accident was allegedly caused by collateral acts of negligence, NUCOR is not liable for failure to take safety precautions for a peculiar risk.

Mr. Jordan also argues that NUCOR is liable under the "multi-employer" doctrine, and therefore was required to comply with OSHA regulations. See 29 U.S.C. § 654(a)(2) (generally referred to as the multi-employer doctrine). "The multi-employer doctrine provides that an employer who controls or creates a worksite safety hazard may be liable under the Occupational Safety and Health Act even if the employees threatened by the hazard are solely employees of another employer." Universal Const. Co., Inc. v. Occupational Safety and Health Review Comm'n, 182 F.3d 726, 728 (10th Cir. 1999). The multi-employer doctrine applies only to general contractors, not the owner of the property. A general contractor may be liable under this provision if it could have been reasonably expected to prevent a standard safety violation due to its supervisory capacity. Marshall v. Knutson Constr. Co., 566 F.2d 596, 599 (8th Cir. 1977). However, NUCOR was not acting as a general contractor. NUCOR did not exercise actual or contractual control over the project, nor did it supervise the use of the crane involved in the accident. "NUCOR could not reasonably have been expected to prevent or abate the safety violations alleged to have occurred with regard to the crane." Jordan v. NUCOR Corp., No. 8:99CV162,

slip op. at 18 (March 26, 2001). Therefore, it cannot be held liable under the multi-employer doctrine.[7]

Mr. Jordan's last argument with regard to NUCOR is that NUCOR should be held liable because the use of the crane constituted a peculiar risk or an inherently dangerous activity. We have already addressed the merits of this argument. As we have stated, we doubt that the use of a crane at a construction site is an inherently dangerous activity. We also agree with the District Court that the accident was caused, not by any act or omission on the part of NUCOR, but by the collateral acts of others, namely an incorrectly tacked load, an inoperable horn, or the failure of Mr. Jordan's coworkers to warn him of the danger. Therefore, NUCOR should not be held liable because of a peculiar risk or inherently dangerous activity.

We affirm the grant of summary judgment in favor of NUCOR on all issues.

B. Carlisle Construction Company

With regard to Carlisle Construction Company, Mr. Jordan presents five arguments on appeal. His first argument is that, again, the crane is an inherently dangerous instrumentality and that Carlisle, as lessor, should be subject to liability. He attempts to categorize Carlisle as the supplier of a dangerous chattel or product. However, under Nebraska law, "[a] supplier of a dangerous product has no responsibility (duty) to warn a knowledgeable user of the dangers of the product if the supplier reasonably believes that the user knows or should know about the danger without a warning." Crook v. Farmland Industries, Inc., 54 F. Supp. 2d 947, 958 (D. Neb. 1999).

---

[7]Additionally, OSHA did inspect the construction site at issue and determined that NUCOR was not acting in the capacity of a general contractor and, therefore, was not subject to the multi-employer doctrine. Jordan v. NUCOR Corp., No. 8:99CV162, slip op. at 18, n.2 (March 26, 2001).

Lexicon was completely aware of all dangers associated with the use of the crane. No evidence in the record supports Mr. Jordan's argument to the contrary. In fact, the Equipment Rental Agreement between Lexicon and Carlisle specifically delegated to Lexicon the duty to repair and maintain the crane. Mr. Spencer, the operator of the crane, testified that he had been working with cranes and other construction equipment since 1977. Mr. Jordan also began working in the construction industry in the late 1970s. J.A. 199. Moreover, there is no evidence that indicates that Carlisle knew that there were any problems with the crane at the time of the accident. Because Carlisle did not know of any problems that existed with the crane at that time, Carlisle could not have prevented the accident. The crane was delivered to Lexicon in working condition. On one occasion, Carlisle was notified about a problem with the horn on the crane. It sent a replacement horn button to fix this problem. Carlisle was not notified about any further problems. Because Carlisle did not have a duty to warn Lexicon about the potential dangers of the crane, Carlisle was not responsible for the maintenance and repair of the crane, and Carlisle was unaware of any problems that Lexicon was having with the crane, Carlisle owed no duty to warn Mr. Jordan of the dangers associated with the use of the crane.

Mr. Jordan next argues that the District Court erred in failing to hold Carlisle liable for the negligent performance of its undertaking. Mr. Jordan finds support for his argument in the Restatement (Second) of Torts § 324A (1965). This section states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)    his failure to exercise reasonable care increases the risk of such harm, or

(b)    he has undertaken to perform a duty owed by the other to the third person, or

(c)    the harm is suffered because of reliance of the other or the third person upon the undertaking.

Mr. Jordan contends that there are factual questions regarding whether the horn was audible at the time of the accident. He argues that if the horn was not working correctly, this defect increased the risk of harm to others because of the reliance on the warning horn by Lexicon employees, and, therefore, Carlisle negligently performed its duty.

Under Nebraska law, in order for a party to be held liable for an act or omission under this doctrine, the party must have agreed to perform a certain act and have assumed the performance of that act. Dieter v. Hand, 333 N.W.2d 772, 775 (Neb. 1983). Even if, as Mr. Jordan contends, the warning horn was not working correctly or could not be heard, Carlisle was never made aware of these problems. Carlisle specifically contracted away its duty to inspect, repair, and maintain the crane. Though the crane had been repaired by Carlisle in the past, Carlisle had not been contacted about any further problems. Therefore, we affirm the District Court's decision that Carlisle is not liable due to negligent performance of its undertaking.

Next, Mr. Jordan argues that the District Court erred in determining as a matter of law that the warning horn on the crane was operational and sounded before the lift that resulted in his injuries. We find no error. Even assuming that the horn was inoperable at the time of the accident, we do not see how Mr. Jordan can withstand summary judgment. Because Carlisle did not have knowledge of any problems that existed with the crane at the time of the accident, it was under no duty to prevent the accident, to maintain the crane in working order, or to repair the crane. It had specifically delegated that duty to Lexicon by contract. Therefore, we cannot say that summary judgment was inappropriate.

Mr. Jordan's remaining arguments are without merit and do not require discussion.

We affirm the District Court's grant of summary judgment in favor of Carlisle.

III.

We affirm the District Court's decision in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.