# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 21-3390

———————————————

Shane Boda

*Plaintiff - Appellant*

v.

Viant Crane Service, LLC, A Wisconsin Corporation; Viant Crane, LLC, a
Wisconsin Corporation

*Defendants - Appellees*

Brown Tank, LLC

*Third Party Defendant - Appellee*

American State Equipment Co., Inc., a Wisconsin Corporation; Grove U.S., LLC;
Manitowoc Crane Companies, LLC, a Wisconsin Corporation; Manitowoc Cranes,
LLC, a Wisconsin Corporation

*Defendant*s

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: May 11, 2022
Filed: August 2, 2022

——————————

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

While working his construction job, Shane Boda was severely injured when a crane cable snapped and dropped its payload onto him. Boda sued Viant Crane Service, LLC and Viant Crane, LLC (together "Viant"), arguing that their crane was defective. The district court[1] granted summary judgment to Viant, and we affirm.

I.

Boda worked in Fairmont, Minnesota as a welder for Brown Tank, LLC, which had been hired to build a set of large metal storage tanks. To move them, Brown Tank rented a crane from Viant. The crane featured an anti-two block (A2B) device, a safety mechanism found on most cranes. When a crane operator raises a crane's cable too high, it can snap. To prevent that risk, an A2B recognizes when a cable is dangerously high, and shuts off the crane's ability to raise the cable any higher. To continue using the crane, the operator must lower the cable to a safe level. However, a small plastic piece can be inserted into the crane to override the A2B lockout function. The crane's operating manual specifically says that it should not be operated with the A2B overridden.

Viant leased the crane to another company before renting it to Brown Tank. When that company returned the crane in February 2015, Viant employees did a routine inspection and found that the A2B was missing. Mechanics replaced the A2B, and a later inspection showed that it was functioning properly. Sometime between May 15 and May 19, Viant delivered the crane to Brown Tank. Chris Larson, a Brown Tank crane operator, testified that he typically inspects new cranes upon arrival. Larson checked the crane's A2B and wrote in his inspection report that it was functional.

---

[1]The Honorable Hildy Bowbeer, United States Magistrate Judge for the District of Minnesota, to whom the case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

The problems started on May 22. Mike Harris, the Brown Tank foreman, noticed that Larson was "driving the crane around the tank, and the headache ball[2] started swinging . . . out of control a little bit." The cable then "snapped on the [A2B] and slipped down the line and landed on top of the headache ball." According to Larson, the cable and A2B "seemed to fall right off . . . [and] just snapped on its own." Harris, however, attributed the A2B falling off to "[u]neven ground driving." Harris's account was the only testimony of how Larson operated the crane on May 22, and there was no testimony of how the crane was operated or who had access to it before May 22. Despite knowing that Brown Tank did not allow employees to use the crane without a functioning A2B, either Harris or Larson decided to override the A2B lockout function so they could keep working. Larson planned to keep the crane from malfunctioning by watching the headache ball's location relative to the tip of the crane. Neither Harris nor Larson told anyone at Brown Tank or Viant that the A2B had fallen off.

Larson operated the crane without an A2B for about two weeks before the accident. On June 5, Shane Boda was working below the crane, despite the crane's warning label stating, "DO NOT PASS LOADS OR BOOM OVER GROUND PERSONNEL." Larson was operating the crane when he "took [his] eyes off the crane tip to tell [two other employees] what they needed to be doing." In that moment, the headache ball "rode up into the . . . pulley of the crane, snapping the cable," and dropped a 2000-pound spreader bar[3] onto Boda's head, causing a serious brain injury.

Boda sued Viant,[4] alleging claims of strict products liability; negligent failure to warn; negligent provision of a defective product; and negligent failure to inspect

---

[2]A "headache ball" is a weighted sphere attached to the lifting hook of a crane.
[3]A "spreader bar" is a bar made of pipe used to distribute weight, typically when lifting wide or heavy loads.
[4]Two other companies, American State Equipment Co. and Grove U.S. LLC, were named as defendants but later dismissed from the case. Viant also added Brown Tank as a third-party defendant.

the crane. The problem for the products liability claim was that there was no direct evidence that the crane was defective. Three days after the accident, Brown Tank notified Viant of the broken A2B, but didn't mention that someone had been injured. As a result, the mechanic Viant sent to repair the crane threw away the broken A2B, and Boda had no opportunity to inspect it. To fill that evidentiary gap, Boda submitted the testimony of Timothy Galarnyk, a professional construction safety and risk management expert. Galarnyk testified that "if properly manufactured and installed, [an A2B] will not just simply 'fall off'" even "[w]hen used in a 'rough' environment."

Viant moved for summary judgment on all claims. On the products liability claim, the court held that no reasonable jury could find that the crane was defective when it left Viant's control. It reasoned that because the A2B could have fallen off due to mishandling by Brown Tank employees, and because Boda didn't provide direct evidence of a defect, he failed to create a genuine dispute of whether the crane was defective. Boda appeals.[5]

## II.

The question in this case is straightforward: Could a reasonable jury find, based solely on Boda's accident, that Viant's crane was defective? Boda says yes. He argues that an A2B doesn't simply fall off a crane without some sort of defect. Viant, on the other hand, argues that there are alternative explanations for the A2B falling off—chiefly, Brown Tank employees mishandling the crane. We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences in Boda's favor. *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002). Summary judgment is appropriate if "there are no genuine issues of material fact." *Id.* All parties agree that Minnesota substantive law applies.

---

[5]Boda only appeals the grant of summary judgment on his products liability claim.

In Minnesota, "[t]he elements of a products liability claim are that (1) a product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed at the time the product left the defendant's control; and (3) the defect proximately caused the plaintiff's injury." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (citing *Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 623 n.3 (Minn. 1984)).

Because Boda doesn't have any direct evidence that the crane was defective, he relies on the doctrine of *res ipsa loquitur*, "the thing speaks for itself."[6] "[I]n some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." *Dewitt v. London Rd. Rental Ctr., Inc.*, 910 N.W.2d 412, 414 n.2 (Minn. 2018) (quotation omitted). For the doctrine to apply, a plaintiff must prove: "(1) that ordinarily the injury would not occur in the absence of negligence; (2) that the cause of the injury was in the exclusive control of the defendant; and (3) that the injury was not due to plaintiff's conduct." *Hoven v. Rice Mem'l Hosp.*, 396 N.W.2d 569, 572 (Minn. 1986).

The parties dispute whether Boda has satisfied the second requirement—exclusive control. Viant delivered the crane to Brown Tank between May 14 and May 19,[7] and the A2B didn't fall off until May 22. Even assuming that Viant delivered the crane at the later date, it was out of Viant's exclusive control for at least three days. That means that something other than a defect—such as Brown Tank's mishandling of the crane—could have caused the A2B to fall off. That concern is exacerbated by testimony that Larson's "[u]neven ground driving" caused the crane's headache ball to swing "out of control." "[W]here lapse of time and substantial opportunity for mishandling of a product by third parties make it equally probable a defective condition developed after leaving the defendant's control,

---

[6]*Res ipsa loquitur*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[7]The record is unclear on the exact date. An expert opinion in the record indicates that the crane was delivered on May 14, whereas the rental agreement between Viant and Brown Tank says the rental period began on May 18. Larson testified that when he arrived at the work site on May 19, the crane was already there.

neither the principles of res ipsa loquitur nor strict liability will support a finding of liability." *W. Sur. & Cas. Co. v. Gen. Elec. Co.*, 433 N.W.2d 444, 449 (Minn. Ct. App. 1988). Applying that rule, the district court held that *res ipsa loquitur* doesn't apply to Boda's claim because the crane was outside of Viant's control for several days, creating a possibility of mishandling by Brown Tank employees.

Boda argues that the district court's evidentiary burden was too strict; after all, "[a] party need not eliminate all possible causes" of an accident. *Id.* And Boda points out that he provided the expert testimony of Galarnyk, who said that "if properly manufactured and installed, [an A2B] will not just simply 'fall off'" even "[w]hen used in a rough environment." But, as the district court observed, "there is no evidence whatsoever about how the Crane was operated, used, maintained, or handled, by Larson or by others, while it was in Brown Tank's hands prior to May 22." *Boda v. Viant Crane Serv., LLC*, No. 19-CV-1437 (HB), 2021 WL 4444733, at *11 (D. Minn. Sept. 28, 2021) (emphasis omitted). Essentially, while Galarnyk established that an A2B won't fall off in the absence of *some* negligence, he failed to reasonably eliminate Brown Tank employees' negligence as the cause of the A2B falling off. Accordingly, "there is no basis upon which Galarnyk or a jury could assess whether any such operation or handling . . . could account for the failure of the [A2B] on May 22." *Id.*

Proving negligence on a theory of *res ipsa loquitur* is difficult. Minnesota law requires that a plaintiff "reasonably eliminate[] improper handling by others" as a potential cause of the accident. *Holkestad v. Coca-Cola Bottling Co. of Minn., Inc.*, 180 N.W.2d 860, 865 (Minn. 1970); *accord Kerr v. Corning Glass Works*, 169 N.W.2d 587, 589 (Minn. 1969) (application of *res ipsa loquitur* was inappropriate where plaintiff was injured by a glass bowl spontaneously exploding, because plaintiff failed to eliminate other plausible causes of the accident, such as dealer mishandling); *Bach v. Unisys Corp.*, Nos. C1-95-1582, C2-95-2160, 1996 WL 146433, at *4 (Minn. Ct. App. Apr. 2, 1996) (application of *res ipsa loquitur* was inappropriate to prove negligence in hay baler accident where the baler was manufactured 20 years before the accident); *W. Sur. & Cas. Co.*, 433 N.W.2d at 447

(affirming summary judgment for car manufacturer where car was been produced five years before an accident and plaintiff presented no evidence eliminating the possibility of mishandling by previous owners). Because the crane wasn't within Viant's exclusive control, the theory of *res ipsa loquitur* is unavailable to Boda.

Boda argues that we should follow *Daleiden v. Carborundum Co.*, 438 F.2d 1017 (8th Cir. 1971). There, a plaintiff was injured when an industrial cutting wheel shattered. *Id.* at 1019. Applying Minnesota law, we affirmed the jury's verdict against the manufacturer. *Id.* at 1019, 1025. But that case had several important features not present here. In *Daleiden*, the plaintiff: (1) provided evidence that he had not misused the cutting wheel; (2) showed that other wheels from the same production batch had malfunctioned; and (3) provided expert witness testimony that a manufacturing defect was the cause of the accident, rather than improper handling. *Id.* at 1021–22. Boda's evidence, in contrast, fails to reasonably eliminate other plausible causes of the A2B malfunctioning, such as mismanagement by Brown Tank. The district court was therefore correct to enter summary judgment in Viant's favor.

III.

We affirm.

_____